NO. 07-03-0074-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JUNE 7, 2005



______________________________




THOMAS R. WIGHT, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2002-439034; HONORABLE JIM BOB DARNELL, JUDGE



_______________________________



Before REAVIS and CAMPBELL, JJ. (1)

MEMORANDUM OPINION


 Following a plea of not guilty, appellant Thomas R. Wight was convicted by a jury
of burglary of a habitation with intent to commit assault, enhanced, and punishment was
assessed by the court at 25 years confinement. Presenting three points of error, appellant
asserts the trial court erred in (1) refusing to include his requested instruction for the lesser
included offense of criminal trespass where the State was granted the lesser included
offense of assault from the original charge of burglary of a habitation with intent to commit
aggravated assault; (2) allowing the State to include, over objection, a picture of the alleged
victim's minor child when the child was not alleged to be a victim nor did the testimony ever
indicate she knew of the occurrence of the alleged events, and admission of the picture
was irrelevant and inflammatory; and (3) refusing to allow the jury to hear testimony from
the defense expert who would have testified to appellant's intent based on his experience,
training, and education evidenced by his certification in a field recognized and regulated by
the same State of Texas as was prosecuting him. We affirm.

 Appellant and the victim were involved in a relationship for a few years beginning in
1999, and after he moved to Arizona, the distance and other problems lead to a breakup. 
One morning in January 2002, appellant unexpectedly arrived at the victim's apartment and
began knocking. When she looked through the peephole and realized it was him, she
escorted her four-year-old daughter to a back bedroom to watch cartoons and shield her
from any potential confrontation. 

 At first, she ignored appellant hoping he would think no one was home. The
knocking became louder and stronger, and appellant also began making repeated
telephone calls from his cell phone to her cordless telephone. Without opening the door,
she asked what he wanted. He told her to "open the door, dammit." As the door continued
to shake, she became frightened and pressed her hands and weight against it. When she
realized the door was not going to hold, she stepped back. The door gave way and,
although still on its hinges, it could no longer be secured.

 The victim was holding a cordless phone in her hand and attempting to call 911
when appellant entered. He took the phone away and struck her on her left ear with it
before tossing it away. Appellant wanted to know whether she was involved with anyone
and why she was avoiding him. Out of concern for her young daughter, she demanded he
be quiet and agreed to talk rather than risk aggravating him. Worried about his
unpredictable state of mind, she cooked him breakfast. He gave her a lemon cream cake
and offered to take crackers to her daughter, who was still in the back bedroom. The victim
accompanied him to the bedroom, but the girl was preoccupied watching cartoons and did
not pay much attention. 

 After appellant ate, he complimented the victim in a suggestive tone and placed his
hand on her thigh. She subtly rejected his advances and went into the kitchen to wash
dishes. He then asked her if she still had the gun he had purchased for her and proceeded
toward the bedroom to look for it before she stopped him because she didn't want her
daughter being disturbed. 

 To persuade him to leave, she explained that she would need to call maintenance
about the damaged door and it would be best if he were not in the apartment when they
arrived. She escorted him to his car and after she was sure he drove away, she returned
to the apartment. After checking on her daughter, she telephoned her mother and told her
about the incident and asked her to speak with appellant's mother to suggest to appellant
that he leave her alone. Her mother insisted she call the police and report the situation.

 After making a statement to Officer Kevin Russell, who responded to the domestic
disturbance call, the victim and her daughter gathered a few belongings and went to a
motel. Appellant's whereabouts at that time were still unknown. 

 After charges were filed, appellant's mother wrote a letter urging the victim to drop
the charges or she would hand over harmful information she had on the victim to be used
against her in a custody case. The victim agreed to sign a non-prosecution affidavit in
exchange for the harmful information and an assurance that appellant would no longer
harass her or her family members. 

 The victim was unaware that the State could pursue the case despite the non-prosecution affidavit. Appellant was charged in a three-count indictment with burglary of
a habitation with intent to commit aggravated assault, burglary of a habitation with intent
to commit assault, and aggravated assault. The victim was subpoenaed to testify. 
Appellant was convicted of burglary of a habitation with intent to commit assault. 

 By his first point, appellant contends the trial court erred in refusing to include his
requested instruction for the lesser included offense of criminal trespass where the State
was granted the lesser included offense of assault from the original charge of burglary of
a habitation with intent to commit aggravated assault. We disagree. 

 The decision whether to include an instruction on a lesser included offense requires
a two-step analysis. Rousseau v. State, 855 S.W.2d 666, 673 (Tex.Cr.App. 1993), cert.
denied, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). First, the lesser included
offense must be included within the proof necessary to establish the offense charged, and
second, there must be some evidence that would permit a rational jury to find that if the
defendant is guilty, he is guilty only of the lesser offense. Id. See also Tex. Code Crim.
Proc. Ann. art. 37.09 (Vernon 1981).

 Burglary of a habitation occurs when a person, without the effective consent of the
owner, enters a habitation with intent to commit felony, theft, or assault. Tex. Pen. Code
Ann. § 30.02(a)(1) (Vernon 2003). A person commits criminal trespass if he enters or
remains on or in property of another without effective consent and had notice that the entry
was forbidden or received notice to depart but failed to do so. § 30.05(a). Criminal
trespass is a lesser included offense of burglary. See Day v. State, 532 S.W.2d 302, 306
(Tex.Cr.App. 1975); see also Wyble v. State, 764 S.W.2d 927, 929 (Tex.App.-Amarillo
1989, pet. ref'd). Thus, the first prong of Rousseau is satisfied. 

 In order to meet the second prong of the Rosseau analysis, there must be some
evidence in the record that appellant is only guilty of criminal trespass. Burglary requires
intent, and intent to commit an act may be inferred from the defendant's conduct and
surrounding circumstances. McGee v. State, 923 S.W.2d 605, 608 (Tex.App.-Houston [1st
Dist.] 1995, no pet.); see also Dues v. State, 634 S.W.2d 304, 305 (Tex.Cr.App. [Panel Op.]
1982). A person commits an assault when he intentionally, knowingly, or recklessly causes
bodily injury to another. Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon Supp. 2004-05).

 Intent to commit a felony, theft, or an assault must exist at the moment of entry or
there is no offense under section 30.02(a)(1). DeVaughn v. State, 749 S.W.2d 62, 65
(Tex.Cr.App. 1988). Furthermore, once unlawful entry is made, the crime is complete,
regardless of whether the intended theft, felony, or assault is actually completed. Ford v.
State, 632 S.W.2d 151, 153 (Tex.Cr.App. [Panel Op.] 1982). Finally, intent is a fact issue
which is usually established by circumstantial evidence and may be inferred from acts,
words, and conduct of the accused. See Moore v. State, 969 S.W.2d 4, 10 (Tex.Cr.App.
1998) 9 (en banc); see also Dues, 634 S.W.2d at 305. 

 The State established that appellant entered the victim's apartment by force and that
substantial damage was done to the door, the frame, and the knob. The victim testified that
appellant used an expletive when demanding she open the door. She also testified she
was frightened for herself and her daughter and did not want him there. She explained that
she acted cordially only to avoid further confrontation. According to her testimony, her left
ear was tender, red, and swollen from being struck by appellant with the cordless phone. 


 The responding officer also testified that he observed the injury to the victim's left
ear. In his opinion, the victim was nervous and scared, yet she downplayed the incident
to avoid upsetting her daughter. She explained the officer's presence in the apartment as
a "nice man" who was there to talk.

 Although no fingerprints or photographs, except for one of the victim's daughter,
were introduced into evidence to show property damage or the victim's injuries, there is
likewise no evidence to indicate the victim fabricated the story, which was the defense's
theory. The only defense witness was a former neighbor of appellant's who testified that
at one time, although she could not pinpoint a date, appellant had a key to the victim's
apartment and the victim had a key to appellant's place. Based on a motion in limine, she
testified, outside the jury's presence, that she believed the victim did not have a good
reputation for truth and veracity. However, the trial court denied any questioning on the
victim's reputation because the witness could not base her opinion on anything other than
personal knowledge.

 Based on the evidence and appellant's conduct, there is nothing to suggest he was
only guilty of the lesser included offense of criminal trespass. Thus, he did not satisfy the
second prong of Rosseau, and the trial court did not err in refusing to instruct the jury on
the lesser included offense. Point of error one is overruled.

 By his second contention, appellant urges error by the trial court in admitting, over
objection, a picture of the alleged victim's minor child when the child was not alleged to be
a victim nor did the testimony ever indicate she knew of the occurrence of the alleged
events, and admission of the picture was irrelevant and inflammatory. We disagree.

 The admission of photographs into evidence is within the discretion of the trial court
and will not be disturbed absent an abuse of discretion. Wyatt v. State, 23 S.W.3d 18, 29
(Tex.Cr.App. 2000). Generally, a photograph is admissible if verbal testimony regarding
it is also admissible. Emery v. State, 881 S.W.2d 702, 710 (Tex.Cr.App. 1994), cert.
denied, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). A non-exhaustive list of
factors to consider in determining whether the probative value of photographs is
outweighed by the danger of unfair prejudice include the number of exhibits offered, their
gruesomeness, detail, size, whether they are black and white or color, whether they are
close-up, whether the body is naked or clothed, and the availability of other means of proof
and circumstances unique to each case.  See Williams v. State, 958 S.W.2d 186, 173
(Tex.Cr.App. 1997) (en banc).

 When the victim was testifying, the State offered a small studio quality photograph
of her young daughter to which the defense objected as follows, "I can't see any reason,
other than to prejudice the jury, for that to be introduced. I see no relevance." (2) The State
responded that the relevance was the victim's daughter's presence during the incident. 
The trial court overruled the objection.

 Evidence is relevant if it has the tendency to make the action more probable or less
probable than it would be without the evidence. Tex. R. Evid. 401. Relevant evidence is
admissible unless the probative value is substantially outweighed by the danger of unfair
prejudice to the defendant. Tex. R. Evid. 403; Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex.Cr.App. 1990) (on reh'g). In overruling a Rule 403 objection, the trial court is
assumed to have applied a balancing test and determined the evidence was admissible. 
Hinojosa v. State, 995 S.W.2d 955, 957 (Tex.App.-Houston [14th Dist.] 1999, no pet.). 
Rule 403 does not require that the balancing test be performed on the record. Id. 

 The victim testified numerous times that her conduct toward appellant was motivated
by the desire to protect her young daughter from confrontation. Throughout her testimony,
her daughter was the primary consideration in avoiding agitating appellant while he was in
the apartment. We conclude that relevance of the victim's daughter's photograph was
demonstrated.

 In reviewing the trial court's Rule 403 analysis, we are convinced there was no unfair
prejudice to appellant by introduction of the photograph. It was a studio quality photograph,
small in size, of a fully clothed child. The trial court did not abuse its discretion in admitting
the photograph. Point of error two is overruled.

 By his third and final point, appellant contends the trial court erred in refusing to
allow the jury to hear testimony from Bill Tuey, an expert in the field of polygraph
examinations who, based on his experience, training, and education evidenced by his
certification in a field recognized and regulated by the same State of Texas as was
prosecuting him, would have testified to appellant's intent. We disagree. 

 The existence and results of a polygraph examination are inadmissible for all
purposes. Tennard v. State, 802 S.W.2d 678, 683 (Tex.Cr.App. 1990) (en banc), cert.
denied, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991), citing Nethery v. State,
692 S.W.2d 686, 700 (Tex.Cr.App. 1985) (en banc), cert. denied, 474 U.S. 1110, 106 S.Ct.
897, 88 L.Ed.2d 931 (1986). Adhering to the highest criminal court's decision, we have
held that a trial court does not err in excluding polygraph test results. See Hall v. State,
970 S.W.2d 137, 142 (Tex.App.-Amarillo 1998, pet. ref'd). 

 Appellant acknowledges our holding in Hall, but argues that the scientifically based
polygraph results would have been admissible under the confrontation clauses of the
United States and Texas Constitutions. He further argues that justice would be done by
allowing the exonerating evidence which, in the hands of a trained examiner would, "shed
the light of truth or a [sic] least break the darkness of a complaining witness's deception." 

 During voir dire examination, Tuey testified that appellant responded truthfully to
questions regarding the allegations against him during a polygraph examination that would
have exonerated him of the charges. Appellant sought to have the results introduced into
evidence. The trial court, following precedent, denied the request. As an intermediate
court of appeals, we are also obligated to follow precedent declared by a higher court until
such time as it modifies the rule that polygraph results are inadmissible for all purposes. 
Id. See also Wilson v. State, 108 S.W.3d 328, 332 (Tex.App.-Fort Worth 2003, pet. ref'd). 
We conclude the trial court did not abuse its discretion in refusing to allow Tuey to testify
to the results of appellant's polygraph examination. Point three is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice



Do not publish.



 
1. Former Chief Justice Phil Johnson was on the panel that heard oral argument. He
did not participate in the decision. Tex. R. App. P. 41.1(b).
2. Although not artfully presented, the specific grounds of the objection are apparent
from the context to satisfy the prerequisites for preserving a complaint for appellate review
under Rule 33.1(a) of the Texas Rules of Appellate Procedure.